

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

MCR MARKETING, L.L.C.

versus                          CIVIL NO. 08-1137
                                            JUDGE TOM STAGG
REGENCY WORLDWIDE
SERVICES, L.L.C., ET AL.

## MEMORANDUM RULING

Before the court is a motion to dismiss and/or transfer filed by Terry Hester ("Hester") and Thomas Finlay ("Finlay") pursuant to Federal Rule of Civil Procedure 12(b)(2) and/or 28 U.S.C. § 1404(a). See Record Document 4. Based on the following, Hester and Finlay's motion to dismiss and/or transfer is **DENIED**.

### I. BACKGROUND

A. **Introduction.**

On August 6, 2008, MCR Marketing, L.L.C. ("MCR") filed this diversity suit in federal court against Regency Worldwide Development, L.L.C. d.b.a. Regency Worldwide Development, Inc., Regency Worldwide Services, Inc. (collectively referred to as "Regency"), Hester, Finlay, International Terminal, Inc. d.b.a. ITI Southeast Group ("ITI"), Felipe A. Teran, and Michael G. Loggins for: (1) breach of contract; (2) unfair trade practices; (3) general negligence; and (4) civil fraud. See

Record Document 1. MCR alleged that suffered a loss of (1) profits and income; (2) reputation; (3) business; (4) goodwill; (5) non-pecuniary interest in the company; and (6) the ability to continue its business. See id.

On October 9, 2008, Hester and Finlay filed a motion to dismiss and/or transfer pursuant to Rule 12(b)(2) and 28 U.S.C. §1404(a). See Record Document 4. On November 10, 2008, MCR filed a memorandum of law in opposition to the motion to dismiss and/or transfer. See Record Document 13. On December 15, 2008, Hester and Finlay filed a reply memorandum. See Record Document 21. Upon MCR's motion, this court struck Hester and Finlay's untimely filed reply memorandum. See Record Document 24. In a separate order, this court denied Hester and Finlay's motion to reconsider the court's decision to strike the reply memorandum. See Record Document 62.

**B.    Relevant Facts And Allegations.**

In March of 2007, MCR and Regency initiated discussions regarding a business plan for marketing and distributing mass quantities of concrete or cement. See Record Document 1 at 4. On March 17, 2007, Regency sent MCR a proposed contract entitled "Noncircumvention and Non-Disclosure Agreement" (hereinafter the "MCR-Regency agreement"); all parties signed the agreement on April 2, 2007. See id. at 5. Pursuant to the MCR-Regency agreement, "Regency and MCR were going to introduce their mutual clients to each other and split the proceeds of any deal the mutual clients executed." Record Document 5 at 9-10.

MCR commenced its search of potential purchasers of concrete for introduction

2

to Regency. In late March, MCR was able to bring St. Lawrence Cement ("SLC") to the verge of contract with Regency. See Record Document 1 at 6. Despite Regency's assurance to MCR that it would be able to satisfy the needs of SLC, it became clear that Regency could not deliver on its promise. As a result, SLC blamed MCR for the failed transaction and told MCR that it would no longer conduct business with MCR. See id. at 7.

Nevertheless, MCR and Regency entered into a new round of discussions after Regency proposed that a new cement supplier, ITI, would become a party to the agreement. See id. at 8. On June 25, 2007, MCR, Regency, and ITI executed a working agreement (hereinafter "MCR-Regency-ITI agreement"), wherein Regency and ITI represented that they had suppliers with cement to sell; MCR also represented that it had clients that wanted to buy cement. See Record Document 13, Ex. A. The MCR-Regency-ITI agreement contained an addendum that provided a fee-splitting schedule for any commissions earned by the parties. See id.

Pursuant to the MCR-Regency-ITI agreement, MCR reinitiated its search for purchasers of cement. See Record Document 1 at 9. Despite the fact that MCR provided at least seven customers to ITI, ITI failed to satisfy its obligations to complete the deals with any of the potential buyers. See id. at 10. MCR later learned that Regency knew that ITI did not have cement to sell, but took no action to assist in the remediation of the unsuccessful deals. See id. at 11. As a result, MCR was again blamed for the failure of the deals, was notified by its potential clients that they would no longer conduct business with MCR, and is unable to procure further

3

clientele or to work in the business of selling cement.

## II. LAW AND ANALYSIS

**A.  Standard Of Review.**

Under Rule 12(b)(2), the "plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a prima facie case if the district court rules without an evidentiary hearing." Johnston v. Multidata Sys. Intern. Corp., 523 F.3d 602, 609 (5th Cir. 2008). "[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." Id.

**B.  Law On Personal Jurisdiction.**

A "federal court sitting in diversity may assert jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the [F]ourteenth [A]mendment to the United States Constitution." Id. Because Louisiana's long-arm statute extends to the limits of due process, courts need only determine whether subjecting a defendant to suit in Louisiana would offend the Due Process Clause of the Fourteenth Amendment. See Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 336 (5th Cir. 1999); La. R.S. 13:3201(B).

Federal due process requires that the plaintiff prove (1) that the non-resident defendants purposely availed themselves of the benefits and protections of Louisiana by establishing "minimum contacts" with the state; and (2) that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice."

4

See Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994). "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001).

Specific jurisdiction exists when the non-resident defendant's contact with the forum state arises from, or is directly related to, the cause of action. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872 (1984). The non-resident defendant must have "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." Walk Haydel and Assocs., Inc. v. Coastal Power Prod. Co., 517 F.3d 235, 243 (5th Cir. 2008).

General jurisdiction exists when a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic. See Helicopteros Nacionales, 466 U.S. at 414-19, 104 S. Ct. at 1872-74. The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." Submersible Sys., Inc. v. Perforadora Cent., S.A., 249 F.3d 413, 419 (5th Cir. 2001). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous, and systematic contacts required for a finding of general jurisdiction. . . ." Revell v. Lidov, 317 F.3d 467, 471 (5th Cir. 2002). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d 309, 312 (5th Cir. 2007).

"In cases involving contracts, the exercise of jurisdiction requires an evaluation of the following factors surrounding the contract and its formation: (1) prior negotiations between the parties; (2) contemplated future consequences of the contract; (3) the terms of the contract; and (4) the parties' actual course of dealing." A & L Energy, Inc. v. Pegasus Group, 791 So.2d 1266, 1272 (La. 6/29/01); ICEE Distrib., Inc. v. J&J Snack Foods Corp., 325 F.3d 586, 591-92 (5th Cir. 2003). "An individual's contract with an out-of-state party alone cannot establish minimum contacts in the home forum." A & L Energy, 791 So.2d at 1272; ICEE, 325 F.3d at 591-92.

Once a plaintiff has met the "minimum contacts" prong of the analysis, courts must consider whether the "fairness" prong of the jurisdictional inquiry is satisfied by analyzing following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental and substantive social policies. See Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994); Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033 (1987). At this point, "a presumption arises that jurisdiction is reasonable and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" de Reyes v. Marine Mgmt. & Consulting, Ltd., 586 So.2d. 103, 106 (La. 1991); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105

S. Ct. 2174, 2185 (1985). "Jurisdictional rules may not be employed in such a way as to make litigation so gravely difficult and inconvenient that a party is unfairly placed at a severe disadvantage in comparison to his opponent." de Reyes, 586 So.2d at 106; Burger King Corp., 471 U.S. at 478, 105 S. Ct. at 2185.

In applying the foregoing principles of personal jurisdiction to this case, this court must examine the relationship between Hester and Finlay, the State of Louisiana, and this litigation. See Helicopteros Nacionales, 466 U.S. at 414, 104 S. Ct. at 1872. In support of their motion to dismiss, Hester and Finlay first argue that they have not purposely availed themselves of the benefits and protections of Louisiana by establishing "minimum contacts" with the state. See Record Document 5 at 3. Hester and Finlay then argue that even if this court finds it has jurisdiction over Regency, the "fiduciary shield doctrine" prevents such finding from establishing personal jurisdiction over them as individuals. See id.

In opposition, MCR argues that Hester and Finlay have purposely availed themselves of the jurisdiction of this court by establishing minimum contacts. See Record Document 13 at 16. First, MCR argues that Hester and Finlay solicited MCR and other customers in Louisiana, negotiated with MCR through methods of communication through Louisiana, required MCR to perform contractual duties in Louisiana, and obligated themselves to make payments to MCR in Louisiana. See id. Second, MCR argues that the contract was directed to MCR at its office and executed in Louisiana. See id. Finally, MCR argues that Hester and Finlay purposely misrepresented facts, which constituted fraud and caused unreasonable harm to MCR

7

and others in Louisiana. See id.

C. **Analysis Of Personal Jurisdiction.**

The seminal Louisiana case for analyzing the exercise of specific personal jurisdiction arising from a contract dispute is A & L Energy, Inc. v. Pegasus Group, 791 So.2d 1266 (La. 6/29/01). In A & L Energy, the Louisiana plaintiff responded to an advertisement in the Wall Street Journal listing certain commercial real estate for sale in Houston, Texas. A & L began negotiating by telephone and facsimile with Pegasus, the California defendant; the parties eventually entered into a purchase agreement. After signing the agreement, a dispute arose and A & L sued Pegasus in Louisiana state court. The relevant issue was "whether the 'minimum contacts' prong of the due process test can be met when the parties corresponded by electronic means to arrive at a contract for purchase of real estate located in another jurisdiction." A&L Energy Inc., 791 So.2d at 1271.

In holding that Pegasus's contacts were not so attenuated to such a degree that they should not have reasonably anticipated being haled into court, the court stated that "once the plaintiff made contact based on the advertisement, the contract executed between the parties was the product of extensive negotiation via telephone, facsimile, and written documents sent by overnight couriers between the California defendants and the Louisiana plaintiff." Id. In addition to the extensive negotiation between the parties, the court noted the following to support its holding: (1) that the contract contained a Louisiana choice of law provision; (2) that the Wall Street Journal advertisements were presumptively designed to target consumers in relative

proximity to Texas; (3) that Pegasus continued to provide A & L with financial information after the agreement was executed; (4) that the escrow agent and the title company chosen by the parties were located in Louisiana; (5) that the parties to the dispute were sophisticated commercial corporations; and (6) that Pegasus was fully aware that it was dealing with Louisiana residents. See id. at 1272-74. After considering these facts, the court determined that Pegasus purposefully availed itself of the benefits and protections of Louisiana and should reasonably have anticipated being haled into court in Louisiana. See id. at 1274; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980).

Based on a review of the non-controverted allegations in MCR's complaint, as well as the memorandum of law and supporting affidavits, the court finds that MCR has met its burden of presenting a prima facie case of personal jurisdiction in that Regency purposely availed itself of the protections and benefits of Louisiana law by establishing minimum contacts with Louisiana. MCR and Regency not only entered into extensive negotiations on multiple occasions, but also consummated two separate contractual agreements. See Record Document 4, Ex. A and Record Document 13, Ex. A. The contemplated future consequences of the contracts within Louisiana were significant. Regency would have an ongoing obligation to broker deals to supply cement to purchasers in Louisiana, to forward the appropriate commission to MCR in Louisiana, and to not disclose any propriety information as a result of the agreements. For example, "[i]n response to notice of a potential buyer secured by MCR, [Regency] and ITI were to immediately respond to that buyer, provide either

MCR or the buyer directly with contract documents and setup inspection of samples, if requested." Record Document 13 at 6. MCR provided Regency with at least three prospective Louisiana clients. Further, Regency drafted the MCR-Regency-ITI agreement, delivered it to MCR in Louisiana via email and fax, and obligated itself to provide correspondence, contracts, mill certificates, samples and cement to clients located in Louisiana. See id. Finally, the court notes that the parties to the dispute were sophisticated commercial corporations and that Regency was fully aware that it was dealing with Louisiana residents. See A&L Energy Inc., 791 So.2d at 1274. Based on these factors, this court concludes that Regency purposefully availed itself of the benefits and protections of Louisiana and should reasonably have anticipated being haled into court in Louisiana.

As MCR has met its initial burden of proving the "minimum contacts" prong of the analysis, the burden of proof and persuasion shifts to Hester and Finlay to present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." de Reyes, 586 So.2d at 106; Burger King Corp., 471 U.S. at 477, 105 S. Ct. at 2185. Although Hester and Finlay did not specifically address the fairness prong in their memorandum of law, the court, after its own inquiry, finds that they have not met their burden of proof. The interests of MCR and the State of Louisiana in having the suit litigated in Louisiana is not outweighed by the gravity of the inconvenience or burden Hester and Finlay would sustain by defending the suit in Louisiana.

D.  **The Fiduciary Shield Doctrine.**

The fiduciary shield doctrine "holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." Stuart v. Spademan, 772 F.2d 1185, 1197 (5th Cir. 1985). However, the doctrine does not apply if the court disregards the corporate entity, usually on the theory that the individual is the alter ego of the corporation. See id. As stated by the Second Circuit, "when a corporate employee acts in his own personal interest rather than in the best interest of his corporation, he is not protected by the fiduciary shield since it is equitable that his self-interested actions be considered his own and be treated as a predicate for the exercise of jurisdiction over him personally." Marine Midland Bank v. Miller, 664 F.2d 899, 903 (2d Cir. 1981).

The "fiduciary shield doctrine [] is not concerned with liability. It is concerned with jurisdiction, and specifically with the fairness of asserting jurisdiction over a person who is acting solely in the interests of another." Id. Accordingly, courts should employ a less stringent standard in applying the fiduciary shield doctrine than they would in determining whether to pierce the corporate veil. The true inquiry is whether the corporation is a real or shell entity, keeping in mind that fairness is the ultimate test. See id.

Here, Hester and Finlay argue that the fiduciary shield doctrine prevents this court from asserting personal jurisdiction over them as individuals based upon their conduct as agents of Regency. See Record Document 5 at 3. Conversely, MCR

11

argues that neither Hester nor Finlay may avail himself of the fiduciary shield as both used the corporate guise to effectuate a fraud. See Record Document 13 at 21. MCR also argues that because Finlay has not alleged any affiliation with Regency, he has not established the requisite corporate link for protection. See id.

Based on the non-controverted allegations and supporting materials submitted by MCR, this court finds that MCR has met its burden of proving that Hester and Finlay may not avail themselves of the fiduciary shield doctrine. MCR alleged that Hester and Finlay setup and utilized as many as eight severely undercapitalized businesses in Canada, Texas, Delaware, Florida, and Alabama for corporate protection. See Record Document 13 at 5. MCR further alleged that Hester and Finlay were named as defendants for their personal frauds and misrepresentations of material facts which led to the demise of MCR's business relationships. See id. at 21. In so holding, the court need not rule on MCR's request that it "pierce the corporate veil" and impose personal liability on Hester and Finlay; personal jurisdiction is the argument of the day.

### E. Motion To Transfer.

A district court may transfer any civil action to any other district or division where it may have been brought for the convenience of the parties and witnesses and in the interest of justice. See 28 U.S.C. § 1404(a). District courts have broad discretion in deciding whether to order a transfer. See In re Volkswagen of Am., Inc., 545 F.3d 304, 311 (5th Cir. 2008). The party seeking transfer must show good cause by clearly demonstrating that the transfer is for the convenience of the parties and

witnesses and in the interest of justice. See id. at 315. "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." Id.

District courts should analyze the private and public interest factors enunciated in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S. Ct. 839 (1947) to determine whether a motion to transfer venue meets the requirements of section 1404(a). See id. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." Id. The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of the foreign law." Id.

In support of their motion to transfer, Hester and Finlay argue that: (1) MCR is the only party domiciled in Louisiana; (2) an Alabama forum is more convenient, less costly, and more expeditious; (3) the relative ease of access to pretrial discovery, depositions, and access to documents favors an Alabama forum; (4) the travel by Hester and Finlay to Louisiana would be a substantial economic and time-consuming hardship; and (5) the costs in obtaining attendance of willing witnesses in Louisiana would be excessive. See Record Document 4 at 3. In opposition, MCR argues that Hester and Finlay's conclusory allegations do not justify the transfer and if it were

granted, the court's order would merely shift any inconvenience to MCR and ITI. See Record Document 13 at 24.

After considering the above-described arguments, this court finds that venue in Alabama is not clearly more convenient than venue in the Western District of Louisiana. Arguably, venue in Alabama would be more burdensome for the other named defendants in the action, who are alleged to be citizens of Texas.

### III. CONCLUSION

Based on the foregoing analysis, Hester and Finlay purposefully availed themselves of the benefits and protections of Louisiana and may not seek protection under a fiduciary shield. Subjecting them to personal jurisdiction in Louisiana does not offend traditional notions of fair play and justice. Additionally, Hester and Finlay did not meet their burden of showing that Alabama would be a more convenient venue than the Western District of Louisiana. Therefore, Hester and Finlay's motion to dismiss and/or transfer is **DENIED**.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 17th day of March, 2009.

JUDGE TOM STAGG